UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| ROBERT D. JORDAN, | ) | No. CV-06-0124-AAM |
| | ) | |
| | ) | **ORDER GRANTING** |
| | ) | **PLAINTIFF'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT,** |
| Plaintiff, | ) | *INTER ALIA* |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**BEFORE THE COURT** are plaintiff's motion for summary judgment (Ct. Rec. 13) and the defendant's motion for summary judgment (Ct. Rec. 19).

**JURISDICTION**

Robert D. Jordan, plaintiff, applied for Supplemental Security Income benefits ("SSI") on December 19, 2002. The application was denied initially and on reconsideration. After timely requesting a hearing, plaintiff, represented by counsel, appeared and testified before Administrative Law Judge ("ALJ") Richard Hines on September 20, 2005. Neuropsychologist Allen D. Bostwick, Ph.D., testified as a medical expert. On December 22, 2005, the ALJ issued a decision

denying benefits.  The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner.  This decision is appealable to district court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the plaintiff's and defendant's briefs, and will only be summarized here. At the time of the hearing, plaintiff was 37 years old.  He has a high school equivalent education and past relevant work experience as a hose assembler and a fruit sorter.  Plaintiff alleges disability since April 1, 1999, due to a combination of orthopedic impairments and mental impairments.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989), quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v.*

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-        2**

*Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in finding that plaintiff does not have "severe" mental impairments.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-    3**

is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

//

//

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-      4**

**ALJ'S FINDINGS**

The ALJ found that plaintiff had "severe" physical impairments due to residuals of a lumbar laminectomy. The ALJ found, however, that plaintiff did not have any "severe" mental impairments, relying, in part, on the hearing testimony of Dr. Bostwick. The ALJ found that plaintiff's "severe" physical impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1. The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work that would not involve lifting more than 10 pounds frequently or more than 30 pounds occasionally, standing for more than a total of 6 hours in an 8-hour workday, or sitting more than one hour at a time, and that this RFC did not preclude him from performing his past relevant work as a hose assembler and a fruit sorter. Accordingly, the ALJ concluded the plaintiff was not disabled.

**SEVERITY OF MENTAL IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §416.908.

Step two is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Bowen*, 482 U.S. at 148. See also *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a de minimis screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied

benefits" at step two. *Bowen*, 482 U.S. at 158. "Basic work activities" are the abilities and aptitudes to do most jobs, including:  1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting.  20 C.F.R. §416.921(b).

The ALJ found the plaintiff did not have a mental impairment or a combination of mental impairments that "have posed more than minimal limitations on his ability to perform basic work-related activities for any consecutive 12 month period at any time pertinent to this decision." (Tr. at p. 17). The ALJ relied, in part, upon Dr. Bostwick's testimony at the hearing.  According to the ALJ:

> Dr. Bostwick . . . testified that the claimant had never received mental health treatment or medication for a mood disorder.  He noted that the mental health counseling that the claimant had received had primarily been case management in order to qualify him for GAU benefits through the Department of Social and Health Services (DSHS).  He opined that there was no medical evidence to support a diagnosis of a pain disorder associated with psychological factors and [a] general medical condition.  Dr. Bostwick noted that the fact that the claimant had never been enrolled in special education classes and had received his GED did not support a diagnosis of any mental impairment secondary [to] his level of intellectual functioning.  Moreover, although testing in November 2004 demonstrated the claimant to have a disorder of written expression, the undersigned notes that WAIS-III[1] scores demonstrated the claimant to be of low-average intellectual functioning, and Trail Making Test scores did not indicate any cognitive impairment.  [Citation omitted].  Dr. Bostwick was of the opinion that the claimant did not have a severe personality disorder but that he had chosen a lifestyle of isolation and dependence on others.

---

[1] Wechsler Adult Intelligence Scale-III.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-        6**

(*Id.*).

According to Dr. Bostwick, based on his review of the medical record, plaintiff had been "consistently" diagnosed with dysthymia "which has generally been mild in severity" and "has not required medication treatment nor hospitalization."[2] Dr. Bostwick observed that the plaintiff had also been diagnosed with a "mixed personality disorder with avoidant and dependent traits." Dr. Bostwick also labeled that as a "consistent finding[] of record." (Tr. at p. 461). Dr. Bostwick testified that he did not find any evidence for a "moderate or greater limitation" based on either of these conditions. (Tr. at p. 464). Where the degree of limitation is no greater than "mild" in the functional areas of activities of daily living, social functioning and concentration, persistence or pace, and there are no repeated episodes of decompensation, the Social Security Administration (SSA) generally concludes an impairment is not "severe" unless the evidence otherwise indicates there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. §416.920a(d)(1).

Dr. Bostwick felt there were some inconsistencies in the record which did not support the diagnoses of "a disorder of written expression" and "pain disorder." Dr. Bostwick opined that test results did not substantiate a learning disorder and that there was no "consistent evidence for a psychological contribution to his pain condition." (Tr. at p. 462). Dr. Bostwick also opined that a diagnosis of "social phobia" with accompanying marked limitations, contained in the record, was inconsistent with the other evidence of record, namely:

> There's references to the Claimant growing up in an isolated area and currently living in an isolated area, and, yet, . . . he had some group treatment at that time. That was for his earlier problems and he was very talkative and interactive, and seemed to enjoy the group therapy at that time because it gave him a chance to

---

[2] "Dysthymia" is a form of depression. *Merck Manual* (17th Ed. 1999) at pp. 1538-39.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-     7**

> interact with people and not be isolated. So I don't find any historical evidence for a social phobia and I don't find any other evidence of anybody talking about anxiety-related condition . . . .

(Tr. at p. 463).

The conclusion of a non-examining physician, such as Dr. Bostwick, does not constitute substantial evidence by itself. See *Erickson v. Shalala*, 9 F.3d 813, 814 at n. 7 (9th Cir. 1993), and *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)("The non-examining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions and conclusions of an examining physician"). In *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), the Ninth Circuit emphasized, however, that the reports of a non-examining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with the other evidence. The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. The Commissioner must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician. The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)(citations omitted).

DSHS "Psychological Evaluation" forms completed by the Okanagan Counseling Center between 1991 and 1993 diagnosed the plaintiff with dependent and avoidant personality disorder causing him moderate to severe cognitive and social limitations. (Tr. at pp. 106-117). Plaintiff was then seen at the Chelan-Douglas Behavioral Health Clinic on a consistent basis between 1995 and 2003. (Tr. at pp. 365-408). In July 2002, Jeffrey Startzel, Psy. D., completed a DSHS "Psychological Evaluation" form on behalf of the plaintiff. He diagnosed the

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-    8**

Case 2:06-cv-00124-AAM    Document 23    Filed 03/06/07

plaintiff with dysthymia and personality disorder, not otherwise specified, with avoidant and dependent features. He indicated that plaintiff had several marked and severe cognitive and social limitations, and that the plaintiff was chronically mentally ill. (Tr. at pp. 278-81).

On September 10, 2002, plaintiff had a "Rehabilitation Consultation" with Douglas M. Burns, M.D., at the Wenatchee Valley Clinic. Reference was made in Dr. Burns' report to a psychological evaluation of the plaintiff by a "Dr. Row" revealing "some elements of dysthymia, pain disorder, written expression disorder, [and] personality disorder."[3] According to the report, "[i]t was felt that [plaintiff's] psychologic issues were actually his primary barrier to his return to work and on the job training was recommended." (Tr. at p. 330). On the same day as this consultation, which was to determine if plaintiff qualified for GAU (State of Washington General Assistance For The Unemployed) benefits, plaintiff met with his new case manager at Chelan-Douglas Behavioral Health Clinic and advised that he was not really interested in any other services and his file could be closed if his request for GAU did not "come through." (Tr. at p. 380).

In March 2003, plaintiff was seen for a psychological evaluation by Steven H. Sutherland, Ph.D. Dr. Sutherland reviewed the aforementioned records, conducted an interview with the plaintiff, observed his behavior, and conducted a mental status examination of the plaintiff. The doctor diagnosed the plaintiff with "major depressive disorder, recurrent, mild to moderate" and "pain disorder with both psychological factors and general medical condition." He did not, however, diagnose personality disorder or a learning disorder. He gave the plaintiff a

---

[3] It appears this is the same Dr. Rowe who evaluated the plaintiff in February 2004. See *infra* at p. 11 of this order.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-      9**

Global Assessment Functioning (GAF) score of 60.[4]  (Tr. at p. 343).  According to Dr. Sutherland:

> Robert Jordan has a mood disorder and a major depressive disorder recurrent mild to moderate, or a long term bereavement disorder.  It is unclear to me.  He seems to be depressed periodically.  In addition, it **appears** that he has a pain disorder with both psychological factors and general medical condition.  This man seemed to understand what was said to him during the evaluation and responded appropriately.  His ability to reason appeared to be fair based on his presentation during the evaluation.  His ability to remember appears to be within normal limits based on the mental status exam.  He showed very slight difficulties with concentration based on the serial seven subtraction from 100.  He reports that he has friends and family and reports generally he has no difficulty getting along with people.  His ability to persist seems to be somewhat reduced secondary to his pain problems.  His ability to adapt to a work environment is fair.  I believe that this man would be competent to manage funds if granted.

(Tr. at pp. 343-44)(emphasis added).

Thomas Rowe, Ph.D., conducted a psychological assessment of the plaintiff in February 2004.  He diagnosed the plaintiff with dysthymia, disorder of written

---

[4] A GAF score of 60 is right at the borderline between "moderate" and "mild" symptoms.  A GAF score between 51 and 60 indicates "moderate symptoms" or "moderate" difficulty in social, occupational, or school functioning.  A GAF score between 61 and 70 is indicative of "mild" symptoms and "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well" and the individual "has some meaningful interpersonal relationships." *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR).

A GAF score between 51-60 is not inherently inconsistent with a finding of non-severe mental impairment since the DSM-IV definition indicates that such a rating can mean either that a person has moderate symptoms "or" moderate difficulty in social, occupational, or school functioning.  Moderate symptoms do not necessarily result in moderate deficits. *Munson v. Barnhart*, 217 F.Supp.2d 162, 165 (D. Me. 2002).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-    10**

expression, a pain disorder associated with both psychological factors and a general medical condition, and a personality disorder, not otherwise specified, with avoidant and dependent features. He assigned the plaintiff a GAF score of 55. (Tr. at p. 415). According to Dr. Rowe:

> The diagnosis of dysthymia is based on Bob's current and long-term functioning and upon the results of current and prior MMPI testing.[5] For most of Bob's life he has expressed feelings of low energy, fatigue, low self-esteem, and indecisiveness. The diagnosis of pain disorder is based on Bob's having had two back surgeries for herniated disks and his current claims **that his back pain is his most significant barrier to employment**. **Bob is not involved in any form of physical therapy for his back nor is he taking any medication for relief of pain. Again, despite his complaints of pain, he was able to perform adequately throughout the morning of the interview and testing with only minimal signs of discomfort. He also continues to do some work around the acreage where he lives, including feeding 14 horses and riding a 4-wheel ATV.** The diagnosis of disorder of written expression is based on Bob's performance on the WIAT-II in which he performed significantly below what would be expected, given his education and intellectual ability.[6] My opinion remains that Bob's primary mental health diagnosis and barrier to work is his Axis II diagnosis of personality disorder including avoidant and dependent features. Bob's history, presentation, and MMPI profile are consistent with dysthymia and dependent personality features. While Bob cites his back injury and pain as his primary barrier to work, prior to his injury [in April 1999] his academic and occupational history was erratic and at least since high school he has demonstrated inconsistency and lack of motivation and follow-through in his occupational performance. Currently[,] Bob has little desire to leave the acreage where he lives and his only social involvement and trip into town occurs one day of the week when he has to attend his group and individual sessions at the Behavioral Health Center. Given Bob's age and the length of time he has apparently been satisfied living his dependent and marginally adaptive lifestyle, I believe it is unlikely that Robert will ever maintain any regular sustained employment or complete any further academic or job training. He appears to be primarily supported by his ex-girlfriend's mother who provides him with housing and food in

---

[5] Minnesota Multiphasic Personality Inventory.

[6] Wechsler Individual Achievement Test.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-      11**

>exchange for minimal chores around the family acreage.
>At this time[,] Robert appears unmotivated to alter his current lifestyle which he has sustained for an extended period of time and to which he has become quite accustomed and comfortable.

(Tr. at pp. 415-16)(emphasis added).

In February 2005, Dr. Startzel completed another DSHS "Psychological Evaluation" form on behalf of the plaintiff. He diagnosed the plaintiff with "dysthmic disorder" and "social phobia," and indicated that while plaintiff had nothing more than "mild" limitations with regard to cognitive functioning, he did have several areas of "marked" limitation with regard to social functioning. (Tr. at pp. 421-24). Dr. Startzel noted: "Robert stated he was discharged from treatment at the local mental health center because he did not meet the criteria for service eligibility. However, he would likely benefit from psychotherapy. Regardless, Robert stated that his back injury is the primary obstacle to working." (Tr. at p. 424).

Also in February 2005, plaintiff was seen at the Wenatchee Valley Clinic "as a new patient to establish care." Plaintiff reported that he walked three miles a day, but could not stand longer than an hour or two without back pain and back spasms. He reported that he was feeding eight horses and that he had to handle 80 pound bales which he broke into pieces and moved with a wheelbarrow. David Houghland, M.D., diagnosed the plaintiff with chronic low back pain which did not "actually sound disabling" to the doctor. The doctor also opined that plaintiff's personality disorder, as diagnosed in the plaintiff's psychological records, was "probably what has kept him from work more than anything." (Tr. at p. 437).

Considering the fractured and inconsistent mental health record of the plaintiff since 1991, it is understandable why the ALJ asked for the assistance of

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-       12**

Dr. Bostwick in attempting to make sense of that record.[7] It is noted that the DSHS evaluations from 1991 through 1993 diagnosed functional encopresis[8], in addition to dependent and avoidant personality disorder, but there is no subsequent mention of functional encopresis as a diagnosis in the mental health record subsequent to 1993. Therefore, it is unclear how significant the functional encopresis diagnosis was in the functional limitations opined in the 1991 to 1993 evaluations. One evaluation from that time period indicated that plaintiff absolutely needed a protective payee because he could not manage money (Tr. at p. 109), however, in 2003, Dr. Sutherland said the plaintiff was capable of managing money. Dr. Sutherland also did not diagnose the plaintiff with any type of personality disorder, unlike Dr. Rowe and Dr. Startzel. Dr. Startzel, however, did not diagnose the plaintiff with a pain disorder, unlike Dr. Sutherland and Dr. Rowe. And neither Dr. Startzel nor Dr. Sutherland diagnosed plaintiff with a learning disorder, unlike Dr. Rowe. Nevertheless, there is one important consistency among all of these medical providers: not one of them opined that psychological difficulties would preclude the plaintiff from working. Dr. Sutherland opined that plaintiff's "ability to adapt to a work environment is fair." Although Dr. Rowe expressed a belief that it was unlikely the plaintiff would ever maintain any regular sustained employment, he did not say it was a matter of the plaintiff being unable to work, but because of a lack of motivation on his part.

    Dr. Rowe felt plaintiff's personality disorder was his primary barrier to working, but the plaintiff did not think so, telling both Dr. Rowe and Dr. Startzel that he felt the primary barrier was his back injury and resulting pain. Plaintiff

---

[7] This satisfied the ALJ's duty to supplement the medical record, to the extent it was incomplete. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

[8] Fecal incontinence that does not have an organic cause. *Merck Manual* (17th Ed. 1999) at pp. 2249-50.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-      13**

does not challenge the ALJ's finding regarding plaintiff's exertional limitations and that said limitations, alone, do not preclude plaintiff from performing his past relevant work. The question is whether there is a psychological component to plaintiff's pain- a non-exertional limitation- that significantly interferes with his ability to perform basic work activities. With a psychogenic pain disorder, an underlying physical disorder may explain the pain, but not its severity or duration.[9]

An ALJ cannot reject a plaintiff's statements about pain merely because they are not supported by objective evidence, especially in the case of a pain disorder where, by definition, the degree of pain is not supported by objective evidence. *Tonapeytan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001). The existence of a pain disorder does not, however, make the plaintiff's pain complaints immune from credibility analysis. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Id*. at 1148. See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition). An ALJ may not reject a claimant's testimony without offering clear and convincing reasons for rejecting his subjective statements. *Smolen*, 80 F.3d at 1281-82.

To the extent plaintiff complained of severe pain and resulting physical limitations, the ALJ offered clear and convincing reasons for rejecting those complaints. These reasons are supported in the record. The ALJ noted that

---

[9] *Merck Manual* (17th Ed. 1999) at p. 1511. See also 20 C.F.R. §404 Subpart P, App. 1 at §12.07 (Listing for somatoform pain disorder).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-        14**

plaintiff's treatment history was inconsistent with disability:

> The record fails to show that he has sought or required significant forms of treatment such as periods of hospital confinement, emergency room treatment or significant office care other than routine maintenance. In this regard, it is noted that claimant did not seek or require any medical treatment between January of 2004 and September of 2004. [Tr. at pp. 433-34]. In February 2005[,] Dr. Hufman reported that he had not seen the claimant for over a year or year-and-a-half for his back. [Tr. at p. 435].[10] Physicians have recommended that the claimant do exercises for his back; however, his failure to comply with these recommendations suggests that his back pain is not as severe as he has alleged. [Tr. at pp. 222; 285-291; 435].[11]

(Tr. at p. 18).

The ALJ also took note of plaintiff's medication usage, or lack thereof[12]:

> In terms of medication usage[,] the claimant has not been prescribed long-term medications such as anti-inflammatories, muscle relaxants or narcotics for his alleged disabling back pain. In July of 2003[,] it was noted that the claimant had "quite a bit" of hydrocodone left. At that time[,] he described his pain as being almost negligible. [Tr. at p. 431]. On February 18, 2005[,] it was noted that the claimant did not take any chronic medications. [Tr. at p. 437]. Likewise, at the hearing[,] the claimant admitted that he did not take any medications for his alleged back pain or impairments. [Tr. at pp. 476-77].

(Tr. at p. 19).

Furthermore, the ALJ noted that plaintiff's lifestyle was inconsistent with

---

[10] For that matter, plaintiff did not seek any treatment from July 2003 to January 2004. (Tr. at pp. 432-33). One of the hallmarks of a somatoform pain disorder is seeing a physician often for a physical condition. Listing 12.07(A)(1) at 20 C.F.R. §404, Subpart P, App. 1.

[11] In July 2003, plaintiff reported his pain at a "0." (Tr. at p. 432). In January 2004, he reported his pain at a "3." (Tr. at p. 433). In February 2005, he reported it as "4" on a scale of 1 to 10. (Tr. at p. 435).

[12] Taking medication frequently is another sign of a somatoform pain disorder. Listing 12.07(A)(1) at 20 C.F.R. §404, Subpart P., App. 1.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-     15**

disability[13]:

> In February 2005, the claimant admitted that he was able to walk 3 miles a day. He also admitted that he had taken up the responsibility of feeding 8 horses. The claimant conceded that he was able to break up 80 pound bales of [hay] and move them with a wheelbarrow. [Tr. at p. 437]. At the hearing[,] the claimant admitted that [he] cared for . . . horses in exchange for rent. He testified that he did this using an ATV; however, he conceded that he also walked up to 2 miles a day. [Tr. at pp. 474; 478; 480].

(Tr. at p. 19).

As pointed out above, Dr. Sutherland did not diagnose the plaintiff with a personality disorder accompanied by any social limitations. He noted that plaintiff reported "that he has friends and family and reports generally he has no difficulty getting along with people." Plaintiff confirmed the same during the hearing. (Tr. at pp. 474; 479; 484-86; and 489) and the ALJ took note of this in his decision: "He admitted that had some friends with whom he occasionally socialized and reported that during one period since his alleged onset date of disability[,] he attended a support group 3 times a week." (Tr. at p. 18).

With regard to the learning disorder diagnosed by Dr. Rowe, the doctor did not feel that was the primary barrier to plaintiff's employment and, as noted, Dr. Sutherland and Dr. Startzel did not even make such a diagnosis.

Finally, it is noted that at the hearing, plaintiff was asked why he could not work if he was able to sit all of the time or change positions every hour. He replied: "I really don't know." (Tr. at p. 475). This was noted by the ALJ in his decision. (Tr. at p. 18).

Finding an impairment to not be "severe" is an exception, rather than the rule, considering the *de minimis* standard involved. This case represents one of those exceptions. The ALJ's determination that plaintiff does not have a "severe"

---

[13] Significant alteration of life patterns is yet another sign of a somatoform pain disorder. Listing 12.07(A)(1) at 20 C.F.R. §404, Subpart P., App. 1.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    16**

mental impairment- that the limitations arising from those impairments, either alone or in combination, is at most "mild," and there have been no episodes of decompensation- is supported by substantial evidence in the record.  The ALJ justifiably relied on Dr. Bostwick in arriving at this conclusion since Dr. Bostwick's opinion was supported by the evidence in the record and was consistent with that evidence (i.e., plaintiff's choosing a lifestyle of isolation and independence confirmed by Dr. Rowe in February 2004 assessment).  Plaintiff has not met his burden of proving that he has a "severe" mental impairment or a combination of mental impairments that is "severe."

**COMBINED EFFECT OF NON-SEVERE MENTAL IMPAIRMENTS AND SEVERE PHYSICAL IMPAIRMENT**

In determining a claimant's residual functional capacity, the ALJ must consider the limiting effects of all of the claimant's impairments, even those that are not "severe."  20 C.F.R. §416.945(e); Social Security Ruling (SSR) 96-8P.

Here, it does not appear the ALJ made a finding that plaintiff has no mental impairments at all.  Such a finding would not be supported by substantial evidence.  Dr. Bostwick did not opine that plaintiff has no mental impairments.  He opined that plaintiff has non-severe mental impairments.  The ALJ did not consider the combined effect of plaintiff's non-severe mental impairments with his severe physical impairment in determining his overall residual functional capacity and ability to perform past relevant work.

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  For an error to be "harmless," it must be inconsequential to the ultimate non-disability determination.  *Stout v. Commissioner of Social Security Administration*, 454 F.3d 1050, 1055 (9th Cir. 2005).  In *Stout*, the court held that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant,

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-        17**

a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. The court could not so conclude in *Stout* where the ALJ silently disregarded lay testimony and failed to provide any reasons for rejecting it. *Id*. at 1056.

It is the ALJ's obligation, not this court's obligation, to consider the combined effect of non-severe and severe impairments. Independent findings by this court regarding that combined effect could not be relied upon by a reviewing court since that court is constrained to review the reasons offered by the ALJ for his decision. *Id*. at 1054, citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The decision of an agency cannot be affirmed on a ground the agency did not invoke in making its decision. *Id*., citing *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

Here, the ALJ's failure to consider the combined effect of plaintiff's non-severe mental impairments and his severe physical impairment is not inconsequential to the non-disability determination. This court is unable to confidently conclude that no reasonable ALJ could have reached a different disability determination upon consideration of the combined effect of plaintiff's non-severe mental impairments and his severe physical impairment.

## CONCLUSION

Plaintiff's motion for summary judgment (Ct. Rec. 13) is **GRANTED** and defendant's motion for summary judgment (Ct. Rec. 19) is **DENIED**. Pursuant to Sentence Four of 42 U.S.C. §405(g), the Commissioner's decision denying benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-    18**

| | |
|---|---|
| 1 | **IT IS SO ORDERED.** The District Executive shall enter judgment |
| 2 | accordingly and forward copies of the judgment and this order to counsel. |
| 3 | **DATED** this  6th  of March, 2007. |

  s/ Lonny R. Suko for and on behalf of
  ALAN A. McDONALD
  Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-     19**